# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| NIKE, INC.,<br><br>              Plaintiff,<br><br>v.<br><br>MSCHF PRODUCT STUDIO, INC.,<br><br>              Defendant. | Case No. 21-cv-1679<br><br>**COMPLAINT FOR:**<br><br>**(1) Trademark Infringement in Violation of 15 U.S.C. § 1114**<br>**(2) False Designation of Origin / Unfair Competition in Violation of 15 U.S.C. § 1125(a)**<br>**(3) Trademark Dilution in Violation of 15 U.S.C. § 1125(c)**<br>**(4) Common Law Trademark Infringement and Unfair Competition**<br><br>**JURY TRIAL REQUESTED** |

Plaintiff Nike, Inc. ("Nike" or "Plaintiff") for its Complaint against Defendant MSCHF Product Studio, Inc. ("MSCHF" or "Defendant") alleges as follows:

## PRELIMINARY STATEMENT

1.     MSCHF is currently taking orders for shoes it refers to as Satan Shoes, which are customized Nike Air Max 97 shoes that MSCHF has materially altered to prominently feature a satanic theme.  This was done without Nike's approval or authorization, and Nike is in no way connected with this project.  Below is an image of the genuine Nike Air Max 97 shoe next to MSCHF's customized Satan Shoe.  The material alterations include at least referring to the shoe as the Satan Shoe, adding red ink and human blood to the midsole, adding red embroidered satanic-themed detailing, adding a bronze pentagram to the laces, and adding a new sock liner.

| Genuine Nike Air Max 97 Shoe | Unauthorized Satan Shoe |
|---|---|
|  | |

2.     Nike has not and does not approve or authorize MSCHF's customized Satan Shoes. Moreover, MSCHF and its unauthorized Satan Shoes are likely to cause confusion and dilution and create an erroneous association between MSCHF's products and Nike.  In fact, there is already evidence of significant confusion and dilution occurring in the marketplace, including calls to boycott Nike in response to the launch of MSCHF's Satan Shoes based on the mistaken belief that Nike has authorized or approved this product.

3.     Nike files this lawsuit to maintain control of its brand, to protect its intellectual property, and to clear the confusion and dilution in the marketplace by setting the record straight— Nike has not and does not approve or authorize MSCHF's customized Satan Shoes.  As an innovative brand that strives to push the envelope and do the right thing, Nike knows it may not please everyone all of the time.  But decisions about what products to put the SWOOSH on belong to Nike, not to third parties like MSCHF.  Nike requests that the Court immediately and permanently stop MSCHF from fulfilling all orders for its unauthorized Satan Shoes.

## THE PARTIES

4.     Nike is a corporation organized under the laws of the State of Oregon with a principal place of business at One Bowerman Drive, Beaverton, Oregon 97005.

5.     On information and belief, MSCHF Product Studio Inc. is a Delaware corporation with its principal place of business in Brooklyn, New York.

## JURISDICTION AND VENUE

6.     This action arises under the trademark and anti-dilution laws of the United States, 15 U.S.C. § 1051, et seq., and under statutory and common law of unfair competition.  This Court has subject matter jurisdiction at least under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 because this action arises under federal trademark law.  This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

7.     On information and belief, this Court may exercise personal jurisdiction over MSCHF because its principal place of business is located within this District, it does business in this District, and it has committed acts of infringement at issue in this Complaint in this District.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because MSCHF's principal place of business is located within this District, MSCHF does business in this District, and MSCHF has committed acts of infringement at issue in this Complaint in this District.

## FACTUAL BACKGROUND

### NIKE

9.     Nike's principal business activity is the design, development and worldwide marketing and selling of athletic footwear, apparel, equipment, accessories, and services.

10.     Nike is the largest seller of athletic footwear and apparel in the world.

11.     Nike sells its products directly to consumers through Nike-owned retail stores and digital platforms, and to retail accounts and a mix of independent distributors, licensees, and sales representatives in virtually all countries around the world.

12.     Nike uses trademarks on nearly all of its products.

13.     Having distinctive trademarks that are readily identifiable is an important factor in creating a market for Nike's products, in identifying Nike and its brands, and in distinguishing Nike's products from the products of others.

14.     As a result of continuous and long-standing promotion, substantial sales, and consumer recognition, Nike has developed powerful trademarks rights, including the marks described in this Complaint (collectively, the "Nike Asserted Marks").

15.     Nike maintains strict quality control standards for its products bearing its trademarks. Genuine Nike products bearing the Nike Asserted Marks are inspected and approved by Nike prior to distribution and sale.

16.     Nike also maintains strict control over the use of its trademarks in connection with its products so that the company can maintain control over its related business reputation and goodwill. Nike, for example, carefully determines how many products bearing its trademarks are released, where the products are released, when the products are released, and how the products are released.

17.     Among Nike's most iconic assets are its NIKE word mark and the Swoosh design.

18.     The U.S. Court of Appeals for the Ninth Circuit has referenced the Nike Swoosh design as an example of a "famous trademark [that has] assumed an exalted status...Consumers sometimes buy products bearing marks such as the Nike Swoosh…for the appeal of the mark itself, without regard to whether it signifies the origin or sponsorship of the product." *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1067 (9th Cir. 2006).

19.     Nike adopted the NIKE word mark and Swoosh design in 1971 and since then, has continuously promoted and sold products bearing those marks, including in connection with dozens of iconic products like the ones described in this Complaint.

20.     Nike has also promoted and sold products bearing the NIKE word mark and Swoosh design in various orientations and placements, including in combination with one another.

21.     Nike has sold billions of products bearing the NIKE word mark and Swoosh design in the United States, accounting for hundreds of billions of dollars in revenue.

22.     Nike has spent tens of billions of dollars promoting both NIKE and Swoosh design branded products in the United States.

23.     Nike advertises and promotes products bearing the NIKE word mark and Swoosh design through a wide variety of traditional and non-traditional means, including print advertising, event sponsorship, and athlete and team endorsements, to name a few.

24.     As a result of Nike's promotional and sales efforts over the past nearly fifty years, the NIKE word mark and Swoosh design are among the most famous, recognizable, and valuable trademarks in the world.

25.     The NIKE word mark and Swoosh design have received unsolicited publicity and praise among consumers and in the media.  For example, in 2013, Nike's Swoosh design was ranked number one on Complex Magazine's list of the "Top 50 Most Iconic Brand Logos of All Time."[1]

26.     In addition, the NIKE word mark and Swoosh design have received judicial and administrative recognition as famous, recognizable, and valuable trademarks.

27.     Nike has registered the NIKE word mark on the Principal Register of the U.S. Patent and Trademark Office in connection with a wide array of goods and services.  Among others, Nike owns all right, title, and interest in the U.S. Trademark Registrations identified below.

---

[1] Maria Cohen & Morgan Bromell, "The 50 Most Iconic Brand Logos of All Time," *Complex Magazine* (Mar. 7, 2013), *available at*: https://www.complex.com/life/2013/03/the-50-most-iconic-brand-logos-of-all-time/.

| Reg. No. | Reg. Date | Goods |
|---|---|---|
| 0,978,952 | Jan. 31, 1972 | Athletic shoes with or without spikes |
| 1,214,930 | Nov. 2, 1982 | Footwear |
| 1,243,248 | Jun. 21, 1983 | Retail footwear and apparel store services |
| 6,124,779 | Aug. 11, 2020 | Retail store services and on-line retail store services featuring apparel, footwear, sporting goods and equipment, and sports and fitness products and accessories |

28.     Pursuant to 15 U.S.C. § 1065, Nike's U.S. Trademark Registration Nos. 978,952, 1,214,930, and 1,243,248, are incontestable and constitute conclusive evidence of the validity of the NIKE word mark, Nike's ownership of the NIKE word mark, and Nike's exclusive right to use the NIKE word mark.

29.     Nike also has registered the Swoosh design on the Principal Register of the U.S. Patent and Trademark Office in connection with a wide array of goods and services.  Among others, Nike owns all right, title, and interest in the U.S. Trademark Registrations identified below.

| Reg. No. | Trademark | Reg. Date | Goods |
|---|---|---|---|
| 977,190 |  | Jan. 22, 1974 | Athletic shoes with or without spikes |
| 1,264,529 |  | Jan. 17, 1984 | Retail footwear and apparel store services |
| 1,323,343 | | Mar. 5, 1985 | Footwear |
| 1,323,342 |  | Mar. 5, 1985 | Footwear |
| 1,238,853 | | May 17, 1983 | Retail footwear and apparel store services |

| 1,325,938 |  | Mar. 19, 1985 | Footwear |
|---|---|---|---|

30.     Pursuant to 15 U.S.C. § 1065, Nike's U.S. Trademark Registration Nos. 977,190, 1,264,529, 1,323,343, 1,323,342, 1,238,853, and 1,325,938, are incontestable and constitute conclusive evidence of the validity of the Swoosh design mark, Nike's ownership of the Swoosh design mark, and Nike's exclusive right to use the Swoosh design mark.

**MSCHF'S UNLAWFUL ACTIVITIES**

31.     On March 26, 2021, a Twitter account focused on sneakers and popular culture published the following tweet announcing MSCHF's Satan Shoes:



32.     Following the publication of the tweet, numerous media outlets reported on the satanic theme of the shoes and that MSCHF would be releasing a limited edition of 666

COMPLAINT - Page 7

individually numbered Satan Shoes.  The Satan Shoes are scheduled for release on March 29, 2021.

33.     On information and belief, MSCHF uses the website satan.shoes/product to promote its Satan Shoes.  According to this website, the body of the Satan Shoe is a "NIKE AIR MAX 97."  The website further states that each shoe "CONTAINS:  60CC INK AND 1 DROP HUMAN BLOOD."  According to media reports, the red ink and drop of literal human blood is incorporated into the sole of each shoe.  Making changes to the midsole may pose safety risks for consumers.

34.     According to the website Snopes.com, a representative of MSCHF told Snopes in an email "that MSCHF buys the shoes from Nike, then MSCHF artists make their own creative modifications before selling them."

35.     Indeed, the pictures of the customized Satan Shoes on MSCHF's webpage reproduced below show numerous significant alterations from genuine Nike Air Max 97 shoes.







36.     For example, the side of the shoe features red embroidery that states "LUKE 10:18." The New International Version translation of the Bible verse Luke 10:18 states "He

replied, 'I saw Satan fall like lightning from heaven.'"  Also embroidered in red on the side of the shoe is the number "6/666."  The numbers 6 and 666 are commonly associated with Satan.

37.     A circular pendent with a pentagram is attached to the laces of each shoe.  A pentagram also appears inside the shoe on the heel.  The pentagram is also commonly associated with satanic imagery.

38.     Furthermore, the tab at the top of the tongue of the shoe depicts a red inverted cross. In popular culture and film, the inverted cross is often associated with satanism or demonic activity.

39.     As can be seen from the back view of the shoe, the left shoe displays the letters "MSCHF" and the right shoe displays the letters "LIL NAS X," a rap artist who apparently collaborated with MSCHF on the Satan Shoes.  The air bladder in the sole of each shoe appears to be filled with a red liquid.

40.     A genuine Nike Air Max 97 shoe does not contain any of these customized features.

41.     Despite these drastic alterations, the Satan Shoes still prominently display the Nike Swoosh logo both at the top of the tongue and along the side of the shoes.

42.     In the short time since the announcement of the Satan Shoes, Nike has suffered significant harm to its goodwill, including among consumers who believe that Nike is endorsing satanism.  Examples of online consumer commentary are reproduced below.



**Anonymous** Mar 26, 2021 At 8:44 pm

Never buying a Nike shoe again! Bunch of hypocrites

Reply



**Anonymous** Mar 27, 2021 At 2:07 am

💯💯crazy they need Jesus

Reply



**Patty Prado** Mar 26, 2021 At 9:02 pm

This is terrible! Won't buy Nike again. You are banned!

Reply



**Anonymous** Mar 26, 2021 At 11:09 pm

no more Nike for anyone in my family

Reply



**Michelle** Mar 26, 2021 At 11:27 pm

I'm appalled. Words cannot describe the amount of disgust and disbelief that this is truly happening. Jesus please save us!!!! Never supporting or buying Nike again!!!!

Reply



**Amber Hovater** Mar 26, 2021 At 11:29 pm

I WILL NEVER WEAR ANOTHER PAIR OF NIKE AN IM THROWING AWAY ALL THE ONES I HAVE NOW..WHAT A DISGRACE THIS IS PURE EVIL..

Reply

COMPLAINT - Page 11



aye_marr15 Nike will no longer have to
worry about me purchasing anything else
from them. Tell them the righteous
people in the back said thank you for
allowing us to see who they really are.
They always use a lost sold to push a
Sick narrative

1h   4 likes   Reply

kiss_my_tattz_81 This is sickening!!!
How is Nike not involved when there's a
Nike symbol on the shoe!!!

2m   Reply

big__allen Fuck nike. They couldn't put
a scripture on Step Curry sneakers but
they can for this?! Fuck nike!!!

3m   Reply

chrispedota This is disgusting. Nike
should be canceled for this!!!!!!

10m   Reply

_miishaal_ Guess no more Nike for me

16m   Reply

COMPLAINT - Page 12



mittspunky Of course Nike is collaborating or they would be threatening to sue to be associated with this evil shit. 💯

16m    Reply

_jj_morin_ You cannot say there is no agenda being pushed here. They could not make it more obvious. I might be done with Nike from now on.

16m    Reply

43.    As shown above, MSCHF is deceiving consumers into believing that Nike manufactures or approves of the Satan Shoes, and consumers' belief that the Satan Shoes are genuine Nike products is causing consumers to never want to purchase any Nike products in the future.

44.    MSCHF's customized Satan Shoes, however, are not genuine Nike products.  Nike did not manufacture or inspect the Satan Shoes, and Nike did not authorize MSCHF to make, promote, advertise, market, or sell the Satan Shoes.

45.    While, on information and belief, the Satan Shoes contain materials derived from genuine Nike products, MSCHF has customized them in such a manner that they constitute new, unauthorized products.

46.    MSCHF has attempted to capitalize on Nike's valuable reputation and customer goodwill by using the Nike Asserted Marks and/or confusingly similar marks in a manner that is likely to cause consumers and potential customers to believe that MSCHF's Satan Shoes are associated with Nike, when they are not.

47.    By virtue of the acts complained of herein, MSCHF has created a likelihood of injury to Nike's business reputation and goodwill, caused a likelihood of consumer confusion,

COMPLAINT - Page 13

mistake, and deception as to the source of origin or relationship of Nike's products and MSCHF's Satan Shoes, and has otherwise competed unfairly by unlawfully trading on and using Nike's Asserted Marks without Nike's permission.

48.     Unless stopped, MSCHF's Satan Shoes and MSCHF's use of Nike's Asserted Marks will continue to cause confusion in the marketplace, including but not limited to initial interest confusion, post-sale confusion, confusion in the secondary sneakers markets, and dilution by blurring and tarnishment.

49.     MSCHF's acts complained of herein are willful and deliberate.

50.     MSCHF's acts complained of herein have caused damage to Nike in an amount to be determined at trial, and such damages will continue to increase unless MSCHF is preliminarily and permanently enjoined from their wrongful acts.

51.     MSCHF's acts complained of herein have caused Nike to suffer irreparable injury to its business. Plaintiff will suffer substantial loss of goodwill and reputation unless and until MSCHF is preliminarily and permanently enjoined from the wrongful acts complained of herein.

## COUNT I: TRADEMARK INFRINGEMENT
## IN VIOLATION OF 15 U.S.C. § 1114

52.     Nike repeats and alleges each and every allegation of paragraphs 1 through __, above, as though fully set forth herein.

53.     MSCHF has knowingly used and continues to use in commerce, without Nike's permission or authorization, Nike's Asserted Marks, and/or confusingly similar marks, in connection with products manufactured, advertised, promoted, and sold in the United States, including the Satan Shoes. MSCHF has used Nike's Asserted Marks with the knowledge of, and the intent to call to mind and create a likelihood of confusion with regard to and/or trade off Nike's Asserted Marks.

54.     MSCHF's use of Nike's Asserted Marks (a) constitutes infringement of Nike's Asserted Marks; (b) is likely to confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of MSCHF's Satan Shoes with Nike's products; and (c) is likely to cause such people to believe in error that MSCHF's Satan Shoes have been authorized, sponsored, approved, endorsed, or licensed by Nike or that MSCHF is in some way affiliated with Nike.

55.     Nike has no control over the nature and quality of the Satan Shoes offered by MSCHF, and Nike's reputation and goodwill will be damaged—and the value of Nike's Asserted Marks jeopardized—by MSCHF's continued use of Nike's Asserted Marks and/or confusingly similar marks.  Because of the likelihood of confusion between MSCHF's Satan Shoes and Nike's Asserted Marks, any defects, objections, or faults found with MSCHF's Satan Shoes will negatively reflect upon and injure the reputation that Nike has established for the products it offers in connection with Nike's registered Asserted Marks. As such, MSCHF is liable to Nike for infringement of their registered marks under 15 U.S.C. §1114.

56.     As a direct and proximate result of MSCHF's wrongful acts, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate. Unless enjoined, MSCHF will continue to use Nike's Asserted Marks and/or confusingly similar marks and will cause irreparable damage to Nike for which Nike has no adequate remedy at law.  Thus, Nike is entitled to an injunction restraining MSCHF and, as applicable, MSCHF's other officers, members, agents, servants, and employees, and all persons acting in concert with them, from engaging in further acts of infringement.

57.     Nike is further entitled to recover from MSCHF the actual damages Nike has sustained, is sustaining, and/or is likely to sustain as a result of MSCHF's wrongful acts.

58. MSCHF's use of Nike's Asserted Marks and/or confusingly similar marks has been intentional and willful. MSCHF's bad faith is evidenced at least by the similarity of the marks on MSCHF's Satan Shoes to Nike's Asserted Marks and the extensive nature of the infringement. Because of the willful nature of MSCHF's wrongful acts, Nike is entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117.

59. Pursuant to 15 U.S.C. § 1117, Nike is also entitled to recover its costs of suit and its attorneys' fees because this is an exceptional case.

**COUNT II: FALSE DESIGNATION OF ORIGIN /**

**UNFAIR COMPETITION IN VIOLATION OF 15 U.S.C § 1125(A)**

60. Nike repeats and alleges each and every allegation of paragraphs 1 through __, above, as though fully set forth herein.

61. The Nike Asserted Marks are federally registered and entitled to protection under federal and common law. Nike has extensively and continuously promoted and used the Nike Asserted Marks for many decades in the United States and worldwide. Through that extensive and continuous use, the Nike Asserted Marks have become famous and well-known indicators of the origin and quality of Nike's products.

62. MSCHF's unauthorized use of Nike's Asserted Marks and/or confusingly similar marks constitutes a false designation of origin that is likely to cause consumer confusion, mistake, or deception as to the origin, sponsorship, or approval of MSCHF and/or MSCHF's Satan Shoes by creating the false and misleading impression that MSCHF's Satan Shoes are manufactured by, authorized by, or otherwise associated with Nike.

63. As a direct and proximate result of MSCHF's wrongful acts, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate. Unless enjoined, MSCHF will continue to use Nike's

Asserted Marks and/or confusingly similar marks and will cause irreparable damage to Nike for which Nike has no adequate remedy at law. Thus, Nike is entitled to an injunction precluding MSCHF and, as applicable, MSCHF's other officers, members, agents, servants, and employees, and all persons acting in concert with them, from using Nike's Asserted Marks and/or confusingly similar marks in connection with MSCHF and the promotion, marketing, offer to sell, or sale of any MSCHF's products.

64.     Nike is further entitled to recover from MSCHF the actual damages Nike has sustained, is sustaining, and/or is likely to sustain as a result of MSCHF's wrongful acts.

65.     MSCHF's use of Nike's Asserted Marks and/or confusingly similar marks has been intentional and willful.  MSCHF's bad faith is evidence at least by the similarity of the markings on MSCHF's Satan Shoes to Nike's Asserted Marks and the extensive nature of the infringement. Because of the willful nature of MSCHF's wrongful acts, Nike is entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117.

66.     Pursuant to 15 U.S.C. § 1117, Nike is also entitled to recover its costs of suit and its attorneys' fees because this is an exceptional case.

## COUNT III: TRADEMARK DILUTION
## IN VIOLATION OF 15 U.S.C. § 1125(C)

67.     Nike repeats and alleges each and every allegation of paragraphs 1 through __, above, as though fully set forth herein.

68.     The Nike Asserted Marks have become famous throughout the United States as a result of the duration, extent, and geographical reach of advertising and publicity, the amount, volume, and geographical extent of Nike's sales and trading areas, their channels of trade, their degree of recognition, and registration of the marks.

69.     Because Nike's products bearing the Nike Asserted Marks have gained a reputation synonymous with fashion, quality, styling, and authenticity, the Nike Asserted Marks have gained substantial renown.  MSCHF has used and continues to use in commerce the Nike Asserted Marks or confusingly similar marks in connection with the advertisement, promotion, and sale of MSCHF's Satan Shoes.

70.     MSCHF's use of the Nike Asserted Marks and/or confusingly similar marks has caused, continues to cause, and/or is likely to cause irreparable injury to and dilution of the distinctive quality of the Nike Asserted Marks in violation of Nike's rights under 15 U.S.C. § 1125(c). MSCHF's wrongful use of the Nike Asserted Marks is likely to cause dilution by blurring and the whittling away of the distinctiveness and fame of the Nike Asserted Marks.  In addition, MSCHF's wrongful use of the Nike Asserted Marks in connection with satanic imagery is likely to cause dilution by tarnishment.

71.     As a direct and proximate result of MSCHF's wrongful acts, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate. Unless restrained, MSCHF will continue to use the Nike Asserted Marks and/or confusingly similar marks and will cause irreparable damage to Nike for which Nike has no adequate remedy at law. Thus, Nike is entitled to an injunction restraining MSCHF and, as applicable, MSCHF's other officers, members, agents, servants, and employees, and all persons acting in concert with them, from engaging in further acts of dilution.

72.     Nike is further entitled to recover from MSCHF the actual damages Nike has sustained, is sustaining, and/or is likely to sustain as a result of MSCHF's wrongful acts.

73.     MSCHF's use of the Nike Asserted Marks and/or confusingly similar marks has been intentional and willful. MSCHF's bad faith is evidence at least by the similarity of the marks

on MSCHF's Satan Shoes to the Nike Asserted Marks and the extensive nature of the infringement. Because of the willful nature of MSCHF's wrongful acts, Nike is entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117.

74.     Pursuant to 15 U.S.C. § 1117, Nike is also entitled to recover its costs of suit and its attorneys' fees because this is an exceptional case.

## COUNT IV: COMMON LAW TRADEMARK INFRINGEMENT
## AND UNFAIR COMPETITION

75.     Nike repeats and alleges each and every allegation of paragraphs 1 through __, above, as though fully set forth herein.

76.     Nike was the first to use the Nike Asserted Marks. As a result of Nike's continuous promotion and sales of products bearing Nike's Asserted Marks for many decades, Nike's Asserted Marks have become widely known, and Nike has been identified in the public mind as the manufacturer of the products to which the Nike Asserted Marks are applied.

77.     As a result of the experience, care, and service of Nike in producing the products to which Nike's Asserted Marks are applied, these products have become widely known and have acquired a worldwide reputation for fashion, quality, styling, and authenticity. Moreover, the Nike Asserted Marks have come to symbolize Nike's respective reputations for quality and excellence.

78.     MSCHF, with knowledge and intentional disregard of Nike's rights, continues to advertise, promote, and sell products using Nike's Asserted Marks and/or confusingly similar marks. MSCHF's acts have caused, continue to cause, and/or are likely to cause confusion as to the source and/or sponsorship of Nike's products.

79.     MSCHF's acts alleged herein and specifically, without limitation, MSCHF's use, manufacture, promotion, offers to sell, and/or selling in the United States products that are

confusingly similar to products bearing Nike's Asserted Marks, infringe Nike's exclusive trademark rights in violation of the common law.

80.     As a direct and proximate result of MSCHF's wrongful acts alleged above, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate. Unless restrained, MSCHF will continue to use Nike's Asserted Marks and/or confusingly similar marks and will cause irreparable damage to Nike for which Nike has no adequate remedy at law. Thus, Nike is entitled to an injunction restraining MSCHF and, as applicable, MSCHF's other officers, members, agents, servants, and employees, and all persons acting in concert with them, from using Nike's Asserted Marks and/or any confusingly similar marks in connection with MSCHF and the promotion, marketing, offer to sell, or sale of any MSCHF's products.

81.     MSCHF's use of Nike's Asserted Marks and/or confusingly similar marks has been intentional and willful. MSCHF's bad faith is evidenced at least by the similarity of MSCHF's Satan Shoes to Nike's Asserted Marks and the extent of the infringement.

## JURY DEMAND

82.     Pursuant to Federal Rule of Civil Procedure 38(b), Nike hereby demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Nike respectfully prays for:

1.     A judgment and order that MSCHF has willfully (A) infringed Nike's Asserted Marks in violation of 15 U.S.C. §1114, (B) used false designations of origin in violation of 15 U.S.C § 1125(a), (C) diluted at least the Nike Asserted Marks in violation of 15 U.S.C. § 1125(c), and (D) violated Nike's common law rights in Nike's Asserted Marks.

2.  A judgment and order enjoining MSCHF and MSCHF's affiliates, officers, agents, employees, attorneys, and all other persons acting in concert with MSCHF, during the pendency of this action and permanently thereafter from:

a.  Manufacturing, transporting, promoting, advertising, publicizing, distributing, offering for sale, or selling any products (including but not limited to the Satan Shoes) under Nike's Asserted Marks, any marks substantially indistinguishable therefrom, or any other marks, names, symbols, or logos which are likely to cause confusion or to cause mistake or to deceive persons into the erroneous belief that any products that MSCHF caused to enter the stream of commerce or any of MSCHF's commercial activities are sponsored or licensed by Nike, are authorized by Nike, or are connected or affiliated in some way with Nike or Nike's Asserted Marks;

b.  Manufacturing, transporting, promoting, advertising, publicizing, distributing, offering for sale, or selling any products (including but not limited to the Satan Shoes) under Nike's Asserted Marks, any marks substantially indistinguishable therefrom, and/or confusingly similar marks;

c.  Implying Nike's approval, endorsement, or sponsorship of, or affiliation or connection with, MSCHF's products, services, or commercial activities, passing off MSCHF's business as that of Nike, or engaging in any act or series of acts which, either alone or in combination, constitutes unfair methods of competition with Nike and from otherwise interfering with or injuring Nike's Asserted Marks or the goodwill associated therewith;

        d.        Engaging in any act which is likely to dilute the distinctive quality of the Nike Asserted Marks and/or injures Nike's business reputation;

        e.        Representing or implying that MSCHF is in any way sponsored by, currently affiliated with, or licensed by Nike; or

        f.        Knowingly assisting, inducing, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs 2(a) to (e) above.

3.      An order that Nike is the exclusive owners of the Nike Asserted Marks and that such marks are valid and protectable;

4.      An order that MSCHF be required to deliver to Nike for destruction any and all shoes, apparel, digital files, packaging, printed graphics, promotional materials, business cards, signs, labels, advertisements, flyers, circulars, and any other items in any of their possession, custody, or control bearing Nike's Asserted Marks, any marks substantially indistinguishable therefrom, confusingly similar marks;

5.      An order granting an award of damages suffered by Nike according to proof at the time of trial;

6.      An order that MSCHF account to Nike for any and all profits earned as a result of MSCHF's acts in violation of Nike's rights,

7.      An award of three times the amount of compensatory damages and increased profits pursuant to 15 U.S.C. § 1117;

8.      An award of statutory damages pursuant to 15 U.S.C. § 1117(c);

9.      An order granting an award of punitive damages for the willful and wanton nature of MSCHF's aforesaid acts under the common law;

10.     An order granting pre-judgment interest on any recovery by Nike;

11.     An order granting an award of Nike's costs, expenses, and reasonable attorneys'

fees; and

12.     Granting such other and further relief as is just and proper.

Dated:  March 29, 2021                   ARNOLD & PORTER KAYE SCHOLER LLP

By:  */s/ Kyle A Schneider*

Kyle A. Schneider
  Kyle.Schneider@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8000
Facsimile: (212) 836-8689

Christopher J. Renk (*pro hac vice* to be filed)
  Chris.Renk@arnoldporter.com
Michael J. Harris (*pro hac vice* to be filed)
  Michael.Harris@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, Illinois 60602-4231
Telephone: (312) 583-2300
Facsimile: (312) 583-2360

Rhonda R. Trotter (*pro hac vice* to be filed)
  Rhonda.Trotter@arnoldporter.com
Oscar Ramallo (*pro hac vice* to be filed)
  Oscar.Ramallo@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, California 90017-5844
Telephone: (213) 243-4000
Facsimile: (213) 243-4199

Bridgette C. Boyd (*pro hac vice* to be filed)
  Bridgette.Boyd@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave. NW
Washington, DC 20001

Telephone: (202) 942-6745
Facsimile:  (202) 942-5999

*Attorneys for Plaintiff Nike, Inc.*