Arnold & Porter

**Michael J. Harris**
+1 312.583.2422 Direct
Michael.Harris@arnoldporter.com

April 1, 2021

The Honorable Eric R. Komitee
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: Nike, Inc. v. MSCHF Product Studio, Inc.
(Doc# 14, E.D.N.Y. 1:21-cv-01679-EK-PK)

Dear Judge Komitee:

We represent Plaintiff Nike, Inc. ("Nike"), and we write to respond to Defendant MSCHF Product Studio, Inc.'s ("MSCHF") letter of March 31, 2021 (Dkt. 14).

**Nike Will Suffer Irreparable Harm Absent Relief**

MSCHF contends that Nike will not suffer irreparable harm absent a temporary restraining order because MSCHF claims, without citation to evidence, that it has already shipped 665 of its 666 infringing shoes. If MSCHF has in fact shipped 665 shoes, the appropriate remedy is for the Court to order a recall of those shoes pending resolution of Nike's motion for a preliminary injunction. *Tecnimed SRL v. Kidz-Med, Inc.*, 763 F. Supp. 2d 395, 414 (S.D.N.Y. 2011) (ordering recall based on trademark infringement).

Courts are particularly likely to order a recall "where there is evidence that a defendant's infringement was intentional, including where the defendant continued infringing after receiving notice of its potentially unlawful conduct." *Id.* That is what happened here. MSCHF did not start taking orders for its infringing shoes until March 29, the same day Nike filed its widely publicized Complaint. Dkt. 7-3, ¶ 4. MSCHF does not deny knowledge of Nike's filing, and, in fact, at the same time that MSCHF was apparently hastily fulfilling orders, MSCHF took the time to promote a t-shirt bearing the front page of Nike's Complaint.

Arnold & Porter






MSCHF's apparent goal was and is to stir controversy to provoke Nike into filing a lawsuit and taking further action. Despite knowing of Nike's objections to its unlawful conduct, MSCHF apparently proceeded to fulfill all the orders for its shoes. This Court should order a recall to prevent MSCHF from gaining an advantage from its own gamesmanship.[1]

In addition, MSCHF concedes that it has not shipped at least one pair of shoes, which it had been planning to give away via a social media raffle. MSCHF represents that it has "suspended that plan pending the resolution of Nike's application," but, as of the writing of this letter, MSCHF's website marketing the Satan Shoe continues to promote this raffle contest for the final pair, asking the public to "Tweet To Enter" with a "Winner

---

[1] MSCHF also complains that Nike did not contact MSCHF before filing the lawsuit. Nike, however, filed the Complaint the next business day after the infringing shoes were announced. Nike believed contacting MSCHF would have been futile, a belief which has been validated by MSCHF's fulfillment of infringing orders after learning that Nike had filed suit.

drawn by lottery on 4/1."[2] And even if MSCHF has internally put its plans on hold despite its public messaging, the fact that it has only suspended the plan to raffle off the last pair of Satan Shoes "pending the resolution of Nike's application" makes clear that Nike's application is not moot.

Given MSCHF's history of shipping infringing shoes faster than Nike can obtain the Court's assistance, Nike is not required to accept MSCHF's representation that it will not ship any more infringing shoes. Entry of a temporary restraining order is thus appropriate to prevent further irreparable harm to Nike.

**Nike Established a Likelihood of Success**

MSCHF contends that Nike cannot show a likelihood of success because Nike allegedly cannot show confusion among sophisticated "sneakerhead" purchasers. As a threshold matter, Nike, in fact, submitted evidence that even "sneakerheads" were actually confused by MSCHF's shoes. Dkt. 7-3 ¶ 3. Furthermore, Nike is not required to show actual confusion at the point of sale in order to establish a likelihood of confusion, particularly at this stage of the proceedings. *Bel Canto Design, Ltd. v. MSS Hifi, Inc.*, 837 F. Supp. 2d 208, 231 (S.D.N.Y. 2011). And MSCHF's argument that purchasers of its shoes are too sophisticated to be confused is unavailing when its products contain Nike's identical mark on a directly competitive product—in such cases even careful inspection of the shoes "would be of doubtful value." *Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1194-95 (2d Cir. 1971).

MSCHF's argument also ignores that, in addition to point-of-sale confusion, Nike has established a likelihood of success based on post-sale confusion, dilution by blurring, and dilution by tarnishment—none of which require a showing of point-of-sale confusion. Each of these grounds that MSCHF ignores is sufficient to establish a likelihood of success on the merits. *See Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 109 (2d Cir. 2000) (reversing denial of preliminary injunction because although "highly sophisticated consumers will not be confused at the point of sale" the defendant's practices harmed the public "by creating post-sale confusion, not just among high-end consumers, but among the general public"); *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 109 (2d Cir. 2009) ("[T]he absence of actual or even of a likelihood of confusion does not undermine evidence of trademark dilution.").

MSCHF also falsely claims that it has made clear that its infringing shoes are not a collaboration with Nike. To the contrary, none of MSCHF's marketing to the public, that

[2] https://satan.shoes/

Nike is aware of, disclaims an association with Nike. It was only after MSCHF caused an extraordinary amount of confusion through a bullhorn marketing campaign that MSCHF quietly made statements disassociating itself from Nike. MSCHF makes no argument that it has dispelled the confusion it caused; nor can it or could it plausibly do so.

MSCHF asks the Court to deny Nike relief on the infringing Satan Shoes because Nike did not immediately sue MSCHF for its Jesus Shoes released eighteen months earlier. A trademark plaintiff, however, "has no obligation to sue until the likelihood of confusion looms large." *ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 68 (2d Cir. 2002) (internal quotation omitted); *see also Luna Distrib. LLC v. Stoli Grp. (USA), LLC*, No. SACV171552DOCJDEX, 2018 WL 5099277, at *6 (C.D. Cal. July 10, 2018) ("[T]rademark holders are not required to constantly monitor every nook and cranny of the entire nation and to fire both barrels of [its] shotgun instantly upon spotting a possible infringer.") (internal quotation omitted).

The Jesus Shoe was a smaller release that attracted little attention and was not one that associated Nike's brand with as charged a topic as satanism. Thus, Nike was under no immediate obligation to sue for the Jesus Shoe, and MSCHF's prior infringements of Nike's trademarks do not excuse its more recent infringements. Nor has Nike ruled out pursuing relief related to the Jesus Shoe at this time.

**The First Amendment Does Not Entitle MSCHF to Sell Shoes Emblazoned with the Swoosh Mark and Marketed as "NIKE" Shoes**

MSCHF asks the Court to give its mass-produced shoes the same protection afforded expressive works, such as a satirical magazine. *E.g., Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Grp., Inc.*, 886 F.2d 490, 492 (2d Cir. 1989). But MSCHF did not create a single shoe-shaped sculpture to sit in a museum. It created hundreds of shoes (at least 666) emblazoned with a Nike Swoosh that it sold to all-comers. That is exactly the business that Nike is in, and Nike's valuable trademarks would be severely diminished if anyone were free to manufacture a shoe with a Swoosh simply by calling it a work of art. The First Amendment requires no such absurd result. *Harley Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 812 (2d Cir. 1999) ("We have accorded considerable leeway to parodists whose expressive works aim their parodic commentary at a trademark or a trademarked product … but have not hesitated to prevent a manufacturer from using an alleged parody of a competitor's mark to sell a competing product.").

Furthermore, even where the defendant creates an expressive work, a defendant asserting the First Amendment must show (1) the mark has "artistic relevance" to the trademark;

Arnold & Porter



and (2) the use of the mark does not "explicitly mislead[] as to the source or the content of the work." *AM Gen. LLC v. Activision Blizzard, Inc.*, 450 F. Supp. 3d 467, 478 (S.D.N.Y. 2020) (quoting *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989)).

Here, MSCHF alleges that the artistic aim of its work is "to criticize social norms that discriminate, such as religious norms that marginalize certain groups of people." Dkt. 14 at 3. While MSCHF has a First Amendment right to criticize discriminatory social norms, those norms have nothing to do with the Nike Swoosh or the NIKE word mark. MSCHF is free to criticize societal norms, but it is not free to sell sneakers advertised with the NIKE word mark and emblazoned with the Nike Swoosh.

Furthermore, MSCHF's use of the marks explicitly misleads. Nearly all of MSCHF's marketing for the Satan Shoes (with the notable exception of the photo MSCHF included in its letter to the Court) prominently features Nike's Swoosh. When the public goes to MSCHF's "lookbook" webpage[3] marketing the Satan Shoe, for example, this is the first thing they see:




[3] https://satan.shoes/lookbook

When the reasonable consumer sees a Nike Swoosh on a shoe or sees the NIKE word mark in advertising for a shoe, it is inevitable that he will believe Nike is the source of that shoe. *See Au-Tomotive Gold, Inc.*, 457 F.3d 1062, 1067 (9th Cir. 2006) (referencing the Nike Swoosh as an example of a famous trademark that has "assumed an exalted status of [its] own in today's consumer culture"). Indeed, as MSCHF implicitly concedes and as the evidence of actual confusion that Nike submitted demonstrates, MSCHF's conduct has caused immense confusion about the source of MSCHF's infringing shoes and tarnished Nike's brand with an unwarranted association with satanism.

To prevent further irreparable harm to Nike, Nike respectfully requests the Court order MSCHF to cease further infringing shipments and recall any infringing shoes that have already been shipped.

Respectfully Submitted,

Michael J. Harris